**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charles David Ellison,<br>Petitioner,<br>v.<br>Ryan Thornell, et al.,<br>Respondents.[1] | No. CV-16-08303-PCT-DWL<br>**ORDER**<br><u>DEATH PENALTY CASE</u> |

Petitioner Charles David Ellison is an Arizona death row inmate seeking habeas relief from this Court. He has filed a motion pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), seeking to stay these proceedings and hold them in abeyance while he returns to state court to exhaust two claims based on *Simmons v. South Carolina*, 512 U.S. 154 (1994). (Doc. 60.) Ellison also requests that this Court authorize his habeas counsel to represent him in his anticipated state-court post-conviction proceeding. Respondents oppose a stay and take no position on the request to appoint federal counsel. (Doc. 61.)

After the stay request became fully briefed, the Court issued an order soliciting supplemental briefing as to whether one of Ellison's anticipated *Simmons* claims "is 'plainly meritless' because Petitioner did not request a parole-ineligibility jury instruction at trial or attempt to present parole-ineligibility evidence at trial." (Doc. 64 at 1.) The parties have now filed their supplemental briefs. (Docs. 65-67.)

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ryan Thornell, the Director of the Arizona Department of Corrections, Rehabilitation and Reentry, is substituted for the former Director, David Shinn.

I. **Background**

In 2002, Ellison was convicted of burglary and first-degree murder for the deaths of Joseph and Lillian Boucher. *State v. Ellison*, 140 P.3d 899 (Ariz. 2006). The jury found six aggravating factors: Ellison had a prior serious felony conviction; the murders were committed for pecuniary gain; the murders were committed in an especially cruel manner; the murders were committed while Ellison was on parole; there were multiple murders; and the victims were more than 70 years old. *Id.* at 908. The jury further found that the mitigating evidence was not sufficiently substantial to call for leniency and sentenced Ellison to death. *Id.*

On direct appeal, the Arizona Supreme Court conducted an independent review of Ellison's death sentences, affirming those sentences and his convictions. *Id.* at 924-28.

On March 23, 2018, following unsuccessful state post-conviction relief ("PCR") proceedings, Ellison filed an amended petition for writ of habeas corpus. (Doc. 21.)

II. **Applicable Law**

    A.    <u>*Simmons*, *Lynch*, *Cruz*</u>

In 1994, the United States Supreme Court held in *Simmons* that when "a capital defendant's future dangerousness is at issue, and the only sentencing alternative to death available to the jury is life imprisonment without possibility of parole, due process entitles the defendant 'to inform the jury of [his] parole ineligibility, either by a jury instruction or in arguments by counsel.'" *Cruz v. Arizona*, 143 S. Ct. 650, 655 (2023) (citation omitted).

Also in 1994, Arizona abolished parole for all felonies committed after 1993. A.R.S § 41-1604.09(I)(1). Therefore, "the only 'release' available to capital defendants convicted after 1993 was, and remains, executive clemency." *Cruz*, 143 S. Ct. at 655. Nonetheless, the Arizona Supreme Court declined to apply *Simmons* in Arizona based on the belief that Arizona's sentencing scheme was sufficiently distinct from the one at issue in *Simmons*. *Id.* (discussing history of the application of *Simmons* in Arizona). The United States Supreme Court rejected this reasoning in its 2016 decision in *Lynch,* holding that "it was

fundamental error to conclude that *Simmons* 'did not apply' in Arizona." *Id*. at 654 (quoting *Lynch v. Arizona*, 578 U.S. 613, 615 (2016)).

Finally, in *Cruz*, the defendant argued at trial and on appeal that, under *Simmons*, he should have been allowed to inform the jury that a life sentence in Arizona would be without parole. The trial court and the Arizona Supreme Court held that Arizona's capital sentencing scheme did not trigger application of *Simmons*. *State v. Cruz*, 181 P.3d 196 (Ariz. 2008). Cruz sought to raise the *Simmons* issue again, after the United States Supreme Court decided *Lynch*, in a PCR petition under Arizona Rule of Criminal Procedure 32.1(g), which permits a defendant to bring a successive petition if "there has been a significant change in the law that, if applicable to the defendant's case, would probably overturn the defendant's judgment or sentence." The Arizona Supreme Court denied relief, concluding that *Lynch* was not "a significant change in the law." *State v. Cruz*, 487 P.3d 991 (Ariz. 2021). The United States Supreme Court disagreed, vacating the Arizona Supreme Court's judgment and remanding the case. *Cruz*, 143 S. Ct. at 662. The Court found that *Lynch* "overruled binding Arizona precedent" and represented a "clear break from the past." *Id.* at 658-59.

B. <u>*Rhines*</u>

*Rhines* authorizes a district court to stay a habeas petition to allow a petitioner to present unexhausted claims in state court without losing the right to federal habeas review pursuant to the relevant one-year statute of limitations. 544 U.S. at 273-77. "Under *Rhines*, a district court must stay a mixed petition"—that is, a petition containing both exhausted and unexhausted claims—"only if: (1) the petitioner has 'good cause' for his failure to exhaust his claims in state court; (2) the unexhausted claims are potentially meritorious; and (3) there is no indication that the petitioner intentionally engaged in dilatory litigation tactics." *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008) (citing *Rhines*, 544 U.S. at 278).

A claim is exhausted if (1) the petitioner has fairly presented the federal claim to the highest state court with jurisdiction to consider it; or (2) no state remedy remains available

for the claim. *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996). The latter form of exhaustion is described as "technical exhaustion" through procedural default. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991); *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007). *See generally Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006) ("In habeas, state-court remedies are described as having been 'exhausted' when they are no longer available, regardless of the reason for their unavailability. Thus, if state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal, those remedies are technically exhausted, but exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding.").

In Arizona, Rule 32 of the Rules of Criminal Procedure provides that a petitioner is procedurally barred from relief on any constitutional claim that could have been raised on appeal or in a prior PCR petition. Ariz. R. Crim. P. 32.1(a); 32.2(a)(3). A petitioner generally may not return to state court to exhaust a claim unless it falls within the category of claims for which a successive PCR petition is permitted. Ariz. R. Crim. P. 32.1(b)-(h), 32.2(a) & (b).

A *Rhines* stay would be inappropriate in a federal habeas case if the claims for which a petitioner seeks a stay are technically exhausted through procedural default. *See, e.g.*, *Armstrong v. Ryan*, 2017 WL 1152820 (D. Ariz. 2017); *White v. Ryan*, 2010 WL 1416054, *12 (D. Ariz. 2010) ("Because the Petition in this case contains claims that are either actually or technically exhausted, it is not a mixed Petition and *Rhines* does not apply.").

III. **Analysis**

Ellison seeks a *Rhines* stay so he can raise Claims 27 and 45(c)(10) of his amended habeas petition in state court. Ellison concedes that these claims were not raised in state court but disagrees with Respondents' contention that the claims are technically exhausted and defaulted, arguing instead that the claims are merely unexhausted.

A.   Claim 27

In Claim 27, Ellison alleges that his due process rights were violated under *Simmons* because the jury was not informed of his ineligibility for parole. (Doc. 21 at 154.) Ellison's jury was informed that if it rejected a death sentence, the judge could impose a sentence of life with the possibility of parole after 25 years. (*Id.* at 154-63.) That was incorrect— Ellison would never be eligible for parole. *Lynch*, 578 U.S. 613. Ellison asserts that the United States Supreme Court's decision in *Cruz* establishes that a viable mechanism now exists for state court review of his *Simmons* claim.[2]

Respondents do not dispute that the first and third requirements for a *Rhines* stay are satisfied as to Claim 27—that is, Respondents do not dispute that Ellison has shown good cause for his failure to exhaust, do not contend that Ellison has been intentionally dilatory, and agree with Ellison that *Cruz* may provide "a procedural avenue to exhaust Claim 27 in state court." (Doc. 61 at 5.) The Court agrees and concludes that Ellison has demonstrated good cause for his failure to exhaust Claim 27, that he did not engage in dilatory litigation tactics, and that the claim is now unexhausted.

Respondents also do not dispute that Ellison's future dangerousness was at issue or that he would have been entitled to a *Simmons* instruction had he asked for one. Nonetheless, Respondents argue that Claim 27 is "plainly meritless"—and, thus, Ellison cannot satisfy the second element for a *Rhines* stay—because Ellison did not request a parole-ineligibility instruction or otherwise seek to inform the jury of his parole ineligibility. (Doc. 61 at 5, citing *State v. Bush*, 423 P.3d 370 (Ariz. 2018)). Ellison concedes his trial counsel did not request such an instruction. (Doc. 60 at 2, citing Doc. 21 at 273-75.)

In *Dixon v. Baker*, 847 F.3d 714 (9th Cir. 2017), the Ninth Circuit elaborated on the contours of the "plainly meritless" standard. It explained that "[i]n determining whether a

---

[2]   In Claim 27, Ellison asserts that the incorrect jury instruction at issue violated both his due process and Eighth Amendment rights. (Doc. 21 at 154.) Because Ellison seeks to stay his petition and return to state court to exhaust only his due process claim under *Simmons* (Doc. 60 at 4), this is the only portion of the claim the Court considers here.

claim is 'plainly meritless,' principles of comity and federalism demand that the federal court refrain from ruling on the merits of the claim unless it is perfectly clear that the petitioner has no hope of prevailing. A contrary rule would deprive state courts of the opportunity to address a colorable federal claim in the first instance and grant relief if they believe it is warranted." *Id.* at 722 (cleaned up). In support of these conclusions, the court cited the passages in *Cassett v. Stewart*, 406 F.3d 614 (9th Cir. 2005), addressing the "standard for determining when it is appropriate to deny an unexhausted claim on the merits under § 2254(b)(2)." *Id.* at 623-24. As to that standard, the Ninth Circuit held in *Cassett* that "a federal court may deny an unexhausted claim on the merits where it is perfectly clear that the applicant does not raise even a colorable federal claim." *Id.* (cleaned up). Given this backdrop, many district courts in the Ninth Circuit have concluded that the "plainly meritless" inquiry under *Rhines* is identical to the standard for dismissal under § 2254(b)(2)—both require a determination of whether the federal claim at issue is "colorable." *See, e.g., Peavy v. Madden*, 2020 WL 4747722, *14 (S.D. Cal. 2020) ("A claim is plainly meritless where 'it is perfectly clear that the petitioner has no hope of prevailing.' That same standard applies to whether this Court can deny an unexhausted claim on the merits.") (citations omitted); *Vasquez v. Frauenheim*, 2018 WL 1157495, *3 (E.D. Cal. 2018) ("A petitioner satisfies this ['plainly meritless'] showing by presenting a 'colorable' claim.") (citations omitted); *Lucas v. Davis*, 2017 WL 1807907, *9 (S.D. Cal. 2017) ("[T]his Court is compelled to follow and apply Ninth Circuit authority, which utilizes the 'colorable federal claim' standard to analyze whether a claim is 'plainly meritless.'") (cleaned up); *Davis v. Walker*, 2012 WL 13114404, *2 (C.D. Cal. 2012) ("Nor can it be said that the claims raised in the second amended petition are plainly meritless. The *Rhines* Court cited to 28 U.S.C. § 2254(b)(2) in referring to this inquiry. . . . A review of the allegations of error in that second amended petition reveals that each presents a colorable Constitutional claim, which is all that is required under *Rhines*.") (citations omitted); *Taylor v. McDaniel*, 2011 WL 1322783, *4 (D. Nev. 2011) ("The proper focus under the second *Rhines* factor is on the merits, as to whether 'it is perfectly clear that the

applicant does not raise even a colorable federal claim.'") (citations omitted). Because the parties do not dispute that this is the appropriate way to determine whether a claim is "plainly meritless" for *Rhines* purposes, the Court will follow the same approach here.

After reviewing the briefing in the parties' motion papers on whether Ellison's *Simmons* claim in Claim 27 is "plainly meritless," the Court issued an order authorizing supplemental briefing. (Doc. 64.) The order explained that "one of the disputed stay-related issues is whether [Claim 27] is 'plainly meritless' because Petitioner did not request a parole-ineligibility jury instruction at trial or attempt to present parole-ineligibility evidence at trial. Much of the parties' briefing on this topic focuses on whether the Arizona Supreme Court's decision in [*Bush*] would foreclose a claim of *Simmons* error under these circumstances. . . . However, because this is ultimately a question of federal law, the Court is also interested in considering how other courts have addressed it." (*Id.* at 1-2.) The order further explained that "the Court's preliminary research has uncovered only one case suggesting that *Simmons* applies even in the absence of an affirmative request by the defendant for a parole-ineligibility jury instruction" and that "the Court's preliminary research suggests that other courts have construed *Simmons* in the manner that Respondents urge the Court to construe it." (*Id.* at 2.) The one identified case supporting Ellison's position was the South Carolina Supreme Court's decision in *State v. Laney*, 627 S.E.2d 726, 730 (S.C. 2006) ("[W]here a defendant's future dangerousness is at issue in a capital sentencing proceeding, and the only sentencing alternative to death available to the jury is life imprisonment without parole, the trial judge *shall* charge the jury, whether requested or not, that life imprisonment means until the death of the defendant without the possibility of parole."). The "other courts" that had resolved the issues in Respondents' preferred manner were the Fourth Circuit, the Eleventh Circuit, the Pennsylvania Supreme Court, and a fellow judge of this Court. *Ingram v. Zant*, 426 F.3d 1047, 1054 n.5 (11th Cir. 1994) ("*Simmons* . . . does not help Ingram in this case because he never requested the trial court to instruct the jury regarding the significance of life imprisonment."); *Bearup v. Shinn*, 2020 WL 5544378, *6 (D. Ariz. 2020) (denying request for *Rhines* stay, where petitioner

wished to present a *Simmons* claim in state court, because "[h]e did not request a *Simmons* instruction or otherwise ask that the jury be informed that he was ineligible for parole" and thus his "rights under *Simmons* were not violated"); *Townes v. Murray*, 568 F.3d 840, 850 (4th Cir. 1995) ("[T]he fact that a jury was not informed of the defendant's parole ineligibility would not violate the defendant's due process rights, as recognized by *Simmons*, if that lack of information was due to the defendant's own inaction. . . . [T]he defendant's right, under *Simmons*, is one of opportunity, not of result."); *Commonwealth v. Spotz*, 759 A.2d 1280, 1291 (Pa. 2000) ("A *Simmons* instruction . . . is required only if the prosecution makes the defendant's future dangerousness an issue in the case and the defendant specifically requests such an instruction.  Here, neither of the conjunctive predicates requiring a *Simmons* instruction exists.").

In their supplemental brief (Doc. 65), Respondents identify an additional decision from the District of Arizona resolving this issue in their favor. *Morris v. Thornell*, 2023 WL 4237334, *3-7 (D. Ariz. 2023) (denying *Rhines* stay as to unexhausted *Simmons* claim, and dismissing that claim, because the petitioner did not request a *Simmons* instruction at trial and "[t]he Arizona Supreme Court's decision in *Bush* explains the due process holding of *Simmons* and validates Respondents' argument that Morris has failed to present a colorable claim").  Respondents also identify additional decisions by the Fourth Circuit and Pennsylvania Supreme Court that reached the same conclusions as the decisions by those courts that were cited in the order authorizing supplemental briefing. *Campbell v. Polk*, 447 F.3d 270, 289 (4th Cir. 2006); *Commonwealth v. Carson*, 913 A.2d 220, 273 (Pa. 2006).  Finally, Respondents contend that the Supreme Court's decisions in *O'Dell v. Netherland*, 521 U.S. 151 (1997), *Shafer v. South Carolina*, 532 U.S. 36 (2001), and *Lynch v. Arizona*, 578 U.S. 613 (2016), compel the same conclusion because they simply describe *Simmons* as providing a narrow right of rebuttal.

In his supplemental briefs (Docs. 66, 67), Ellison identifies two additional lower court decisions concluding that a claim of *Simmons* error may lie "irrespective of the defendant's actions" at trial: (1) an unpublished order issued on July 10, 2023 in *Tucker v.*

*Thornell*, No. CV-17-03383-PHX-DJH (D. Ariz.) (ECF No. 102), in which a fellow judge of this Court granted an unopposed request for a *Rhines* stay; and (2) *Bronshtein v. Horn*, 2001 WL 767593, *18-21 & n.23 (E.D. Pa. 2001), in which a district court granted habeas relief on a *Simmons* claim even though "the petitioner did not object at trial to the trial court's failure to instruct the jury that life means life without parole." Additionally, Ellison argues that any suggestion that *Simmons* simply provides a "narrow right of rebuttal" was rejected in *Kelly v. South Carolina*, 534 U.S. 246 (2002), which conceptualized *Simmons* as creating a right to accurate jury instructions, and that "[r]eading *Simmons* and its progeny this way after *Kelly* is consistent with Ninth Circuit precedent recognizing that inaccurate or misleading instructions may require habeas relief irrespective of whether the defendant challenged the instruction at trial." (Doc. 66 at 2-4, citing *Sechrest v. Ignacio*, 549 F.3d 789 (9th Cir. 2008), *McLain v. Calderon*, 134 F.3d 1383 (9th Cir. 1998), and *Murtishaw v. Woodford*, 255 F.3d 926 (9th Cir. 2001).) Finally, Ellison cites various Arizona decisions for the proposition that "any failure to challenge [a jury] instruction at trial [where there has been a significant post-trial change in the law] cannot preclude merits review in state court." (*Id.* at 4–5.)

Having carefully considered the parties' arguments and the cases set forth in the original and supplemental briefing, the Court concludes that Ellison is not entitled to a *Rhines* stay as to his *Simmons*-based due process claim in Claim 27. As an initial matter, the Court assigns little weight to *Tucker v. Thornell* because the request for a *Rhines* stay in that case was unopposed. Thus, the resulting two-page order granting the parties' agreed-to relief sheds little light on the disputed issues here.

Once *Tucker* is put aside, Ellison has only identified two decisions adopting the interpretation of *Simmons* that he presses here: one by the South Carolina Supreme Court in 2006 and another by a federal district judge in the Eastern District of Pennsylvania in 2001.³ In contrast, Respondents have identified an array of reasoned decisions spanning

---

³    Although *Bronshtein* was affirmed in relevant part by the Third Circuit, the Court does not construe the Third Circuit's decision as expressing any view on whether a *Simmons* instruction is required in the absence of a request by the defendant—that issue

- 9 -

nearly three decades from an array of jurisdictions—including multiple federal appellate courts and multiple judges of this Court—that have reached a contrary interpretation.

This backdrop is instructive when conducting the "plainly meritless" inquiry that *Rhines* requires. As noted, the essential question posed by that inquiry is whether the unexhausted federal claim is "colorable." This inquiry is informed by "principles of comity and federalism." *Dixon*, 847 F.3d at 722 (citation omitted). Those principles counsel in favor of granting a stay whenever there is even a chance of success during future state-court litigation, because "[a] contrary rule would deprive state courts of the opportunity to address a colorable federal claim in the first instance and grant relief if they believe it is warranted." *Id.* (cleaned up). Otherwise, those principles counsel in favor of denying a stay, because this approach will "sav[e] a state court from needless and repetitive litigation." *Mercadel v. Cain*, 179 F.3d 271, 277 (5th Cir. 1999) (citing with approval for this proposition in *Cassett*, 406 F.3d at 624).

Here, it is perfectly clear that Ellison has failed to allege the necessary predicates of a colorable *Simmons* claim—he did not request that the jury be informed of his parole ineligibility. Although Ellison argues that *Kelly* reconceptualized *Simmons* as creating a free-floating right to a jury instruction on parole ineligibility, regardless of whether such an instruction is requested, that interpretation is difficult to reconcile with *Kelly*'s parting observation that "Kelly, no less than Shafer, was entitled to his *requested* jury instruction." 534 U.S. at 257 (emphasis added). The Arizona courts have also made clear that they do not believe a claim of *Simmons* error will lie in this circumstance, and this Court agrees with that analysis. *Bush*, 423 P.3d at 386-88; *see also State v. Riley*, 459 P.3d 66, 107 (Ariz. 2020) ("[R]elief under *Simmons* is foreclosed by the defendant's failure to request a parole ineligibility instruction at trial."). Finally, and more broadly, construing *Simmons*

does not appear to have been raised on appeal. *Bronshtein v. Horn*, 404 F.3d 700, 715-20 (3d Cir. 2005) (noting that the appellant only raised two arguments why *Simmons* should be deemed inapplicable—first, because it was decided after the habeas petitioner's conviction became final, and second, because "the prosecution's arguments and the testimony that it elicited at the penalty phase did not put the issue of Bronshtein's future dangerousness at issue"—and rejecting both of those arguments as a factual matter).

as creating a right to a jury instruction on parole ineligibility upon request is consistent with how the Supreme Court has often conceptualized due-process rights in this context, which is as "an opportunity to be heard." *Oyler v. Boles*, 368 U.S. 448, 452 (1962). *See also Gardner v. Florida*, 430 U.S. 349, 362 (1977) ("We conclude that petitioner was denied due process of law when the death sentence was imposed, at least in part, on the basis of information which he had *no opportunity to deny or explain*.") (emphasis added); *Simmons*, 512 U.S. at 161 (Blackmun, J., joined by Stevens, Suter, and Ginsburg, JJ.) (citing *Gardner*, 430 U.S. at 362); *Simmons*, 512 U.S. at 175 (O'Connor, J., joined by Rehnquist, C.J., and Kennedy, J., concurring in the judgment) (citing *Skipper v. South Carolina*, 476 U.S. 1, 5 n.1 (1986), quoting *Gardner*, 430 U.S. at 362).

Under these circumstances, it would be an empty gesture to allow Ellison to return to state court to litigate his *Simmons* claim—again, it is perfectly clear that Ellison has failed to present a colorable federal claim. Additionally, the empty gesture would be corrosive to principles of comity and federalism, because it would burden the state courts with needless litigation. *Cassett*, 406 F.3d at 624. To the extent this analysis does not specifically address all of the arguments raised in Ellison's briefing, the Court notes its agreement with Judge Campbell's recent decision in *Morris v. Thornell*, which rejected a request for a *Rhines* stay under analogous circumstances. 2023 WL 4237334 at *3-7.

Because the decision in *Cruz* arguably renders Ellison's due process-based *Simmons* claim unexhausted and his petition therefore mixed, the Court will also deny the due process-based *Simmons* claim on the merits for all of the reasons stated above. *See* 28 U.S.C. § 2254(b)(2) (allowing denial of unexhausted claims on the merits); *Morris*, 2023 WL 4237334 at *7 (after denying *Rhines* stay as to unexhausted *Simmons* claim, ordering dismissal of that claim under § 2254(b)(2)). *See also Lambrix v. Singletary*, 520 U.S. 518, 524–25 (1997) (explaining that the court may bypass the procedural default issue in the interest of judicial economy when the merits are clear but the procedural default issues are not).

…

B.     Claim 45(C)(10)

Under *Rhines*, and in light of the Court's dismissal of the due process-based *Simmons* claim in Claim 27, the Court must determine whether Ellison's habeas petition remains mixed. At issue is Claim 45(C)(10), alleging trial counsel was ineffective for failing to inform witnesses, experts, the judge, or the jury of Ellison's parole ineligibility.[4] (Doc. 21 at 273.) Although Ellison raised other allegations of ineffectiveness in state-court PCR proceedings, he did not raise this claim in state court. (PCR Pet. at 28–84; *see id.* at 154, 275.) Respondents argue that this claim is technically exhausted and procedurally defaulted because Ellison would be barred from returning to state court to exhaust it. (Doc. 30 at 15-16; Doc. 61 at 7.) Ellison replies that it is at least debatable or even likely that Arizona courts would permit a new ineffective assistance of counsel ("IAC") claim related to the inaccurate parole instruction where there has been a change in the law and an earlier-presented claim would have been foreclosed by then-controlling precedent. (Doc. 62 at 6.)

Respondents have the better of this argument. If Ellison were to return to state court to attempt to exhaust this IAC claim, the claim would be found precluded under Rule 32.2(a) because IAC claims do not fall within an exception to preclusion. *See* Ariz. R. Crim. P. 32.2(b); 32.1(b)-(h); *see also State v. Spreitz*, 39 P.3d 525, 526 (Ariz. 2002) ("Our basic rule is that where ineffective assistance of counsel claims are raised, or could have been raised, in a Rule 32 post-conviction relief proceeding, subsequent claims of ineffective assistance will be deemed waived and precluded.") (emphasis omitted). *Cruz*

---

[4] Ellison additionally notices his intent to exhaust the entirety of Claim 45—which is composed of several subclaims challenging Ellison's trial counsel's performance at the guilt and sentencing phases of trial (Doc. 21 at 210–87)—when he returns to state court. (Doc. 60 at 12–13.) In his reply, Ellison clarifies that he intends to exhaust these claims in state court because his ineffective assistance claim should be considered as a whole (Doc. 62 at 6, citing *Browning v. Baker*, 875 F.3d 444, 471 (9th Cir. 2017)) and because a stay is otherwise "warranted so Ellison can pursue the claims related to the parole instruction." (*Id.* at 7.) Because Ellison concedes his ability to raise Claim 45 in its entirety rises or falls on whether he is entitled to stay his habeas petition to exhaust his parole ineligibility claims, the Court does not separately address Respondents' assertion that Ellison is not entitled to a stay to allow him to pursue Claim 45 in state court. (Doc. 61 at 7.)

did not alter that analysis. Therefore, Claim 45(C)(10) is "technically" exhausted but procedurally defaulted because Ellison no longer has an available state remedy.

Ellison notes that Rule 32.2(a)(3) does not apply to claims that "affected a right of constitutional magnitude" if the petitioner did not personally waive the claim. (Doc. 60 at 13-14, citing *Stewart v. Smith*, 46 P.3d 1067, 1070 (Ariz. 2002).) Ellison's IAC claims, however, do not fall within the limited framework of claims requiring a knowing, voluntary, and intelligent waiver before the application of a preclusion finding. *Stewart*, 46 P.3d at 1070 (identifying the right to counsel, right to a jury trial, and right to a 12-person jury under the Arizona Constitution as the type of claims that require personal waiver). Additionally, if different IAC allegations are raised in successive petitions, the claims in the later petitions will be precluded without a review of the constitutional magnitude of the claims. *Id.* at 1071 ("[I]f a petitioner asserts ineffective assistance of counsel at sentencing, and, in a later petition, asserts ineffective assistance of counsel at trial, preclusion is required without examining facts. The ground of ineffective assistance of counsel cannot be raised repeatedly.") In his PCR petition, Ellison raised 16 other IAC claims. (PCR Pet. at 28–84.) Because a successive petition would not be Ellison's first petition raising IAC claims, the Court need not address the nature of the right affected by counsel's ineffective performance. Ellison's successive IAC claims, such as Claim 45(C)(10), are necessarily precluded. *See e.g., Armstrong*, 2017 WL 1152820 at *6 ("Because Petitioner would not be able to exhaust Claim 1(A) in a successive state petition for post-conviction relief, Petitioner's IAC claim is 'technically' exhausted, and a *Rhines* stay would be inappropriate."); *Lopez v. Schriro*, 2008 WL 2783282, *9 (D. Ariz. 2008) ("[I]f additional ineffectiveness allegations are raised in a successive petition, the claims in the later petition necessarily will be precluded."), *amended in part*, 2008 WL 4219079 (D. Ariz. 2008), *aff'd sub nom. Lopez v. Ryan*, 630 F.3d 1198 (9th Cir. 2011), and *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798, 818 (2015).

Ellison also asserts that "Arizona postconviction practice illustrates" that the limits on second and successive postconviction challenges are not always applied in capital cases.

(Doc. 60 at 14.) This argument is unavailing—one of the non-precedential state-court cases cited by Ellison involved timeliness issues[5] and in the other, the trial court concluded that the IAC claim raised in a second petition was precluded because the petitioner had asserted it in his first PCR petition.[6] More important, even if the cited cases demonstrated some inconsistency in Arizona's timeliness rulings, they do not call into doubt the preclusive effect of Arizona's rules. The Ninth Circuit has held that "Arizona Rule of Criminal Procedure 32.2(a)(3) is independent of federal law and has been regularly and consistently applied, so it is adequate to bar federal review of a claim." *Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012) (citing *Ortiz v. Stewart*, 149 F.3d 923, 931–32 (9th Cir. 1998)).

Ellison also asserts that he may obtain merits review in state court of his unexhausted IAC claims through the Arizona Supreme Court's original habeas jurisdiction, *see* Ariz. Const. art. II, § 14 ("The privilege of the writ of habeas corpus shall not be suspended by the authorities of the state."); *see also* Ariz. R Crim. P. 32.3 cmt. (noting that Rule 32 "does not restrict the scope of the writ of habeas corpus."). But in Arizona, "the writ of habeas corpus may be used only to review matters affecting a court's jurisdiction. Even where there has been a denial of due process of law, it must be such as to deprive a court of jurisdiction in order to permit of the issuance of the writ." *In re Oppenheimer*, 389 P.2d 696, 700 (Ariz. 1964). Thus, "[t]he writ of habeas corpus is not the appropriate remedy to review irregularities or mistakes in a lower court unless they pertain to jurisdiction." *State v. Ct. of Appeals, Div. Two*, 416 P.2d 599, 601 (Ariz. Ct. App. 1966). Rule 32.3(b), provides: "If a court receives any type of application or request for relief— however titled—that challenges the validity of the defendant's conviction or sentence following a trial, it must treat the application as a petition for post-conviction relief." *See also* A.R.S. § 13-4233 (if defendant applies for writ of habeas corpus attacking validity of conviction or sentence, court shall treat it as petition for post-conviction relief).

---

[5] *State v. Prince*, 1996 WL 91519 (Ariz. Ct. App. 1996), *review denied and order depublished* (Sept. 17, 1996); *id.* at *7 (Thompson, J., dissenting).

[6] Doc. 60-2, Ex. C at 2 (minute entry, *State v. Lambright*, No. CR-05669 (Pima Cnty. Super. Ct. Apr. 5, 1993)).

Ellison asserts that the Arizona Supreme Court took "original jurisdiction" of a habeas petition filed by a condemned prisoner to deny it on its merits and as precluded. (Doc. 62 at 8, citing *Dixon v. Shinn*, No. HC-21-0007 (Ariz. Sup. Ct. May 21, 2021).) However, the writ of habeas corpus that Dixon filed *pro se* was, in part and liberally construed, a jurisdictional challenge.

Next, the Court addresses Ellison's argument that this Court should allow the Arizona courts to consider adopting an exception for IAC claims defaulted due to previous PCR counsel's deficient performance. (Doc. 62 at 8.) In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court held that the ineffective assistance of post-conviction counsel can, in some instances, excuse the default of a claim of ineffective assistance of trial counsel in federal habeas petitions. But *Martinez* has no relevance to an Arizona Rule 32 proceeding. *State v. Escareno-Meraz,* 307 P.3d 1013, 1014 (Ariz. Ct. App. 2013) ("*Martinez* does not alter established Arizona law."). "[A] claim that Rule 32 counsel was ineffective is not a cognizable ground for relief in a subsequent Rule 32 proceeding." *Id.* "Nor can the underlying claim of ineffective assistance of trial counsel be directly raised in an untimely and successive post-conviction proceeding. . . ." *State v. Perez*, 2016 WL 6301101, *1 (Ariz. Ct. App. 2016) (internal citation omitted). *Martinez* does not entitle defendants to raise precluded claims in state court. *State v. Evans*, 506 P.3d 819, 826–27 (Ariz. Ct. App. 2022) ("*Martinez* pertains to federal habeas actions . . . [and] does not entitle Evans to raise precluded state claims.").

Ellison also asserts that, after the Supreme Court's recent decision in *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022), "actual rather than technical exhaustion is now a precondition to obtaining the benefits of *Martinez*." (Doc. 62 at 9.) Ellison argues that, relying on principles of comity and federalism, *Ramirez* endorsed petitioners returning to state court to exhaust their claims. *See, e.g.*, 142 S. Ct. at 1732 (noting "a federal court is not required to automatically deny unexhausted or procedurally defaulted claims" but that a "prisoner might have an opportunity to return to state court to adjudicate the claim.") (citing *Rose v. Lundy*, 455 U.S. 509, 520 (1982)). In support of this assertion, Ellison

directs the Court's attention to the outcome in *Guevara-Pontifes v. Baker*, 2022 WL 4448259 (D. Nev. 2022), cited by the Court in *Pandeli v. Shinn*, 2022 WL 16855196, *5 (D. Ariz. 2022). In *Guevara-Pontifes*, the petitioner sought a stay to exhaust a claim of ineffective assistance of trial counsel, arguing, as Ellison does here, that postconviction counsel's ineffectiveness in failing to raise the claim constituted good cause under *Rhines*. The court held that *Ramirez* did not "concern the good cause requirements for a *Rhines* stay" and did not "foreclose a petitioner from demonstrating good cause for a stay based on post-conviction counsel's failure to raise an unexhausted claim in state court." *Id.* at *4. The court also rejected the argument that a stay would be futile based on Nevada's procedural default bars. *Id.* at *4-5. The court explained that if the stay were granted, the petitioner could "argue to the Nevada Supreme Court, that in light of the Supreme Court's decision in *Ramirez*, it should overrule *Brown* and permit the use of the principles set forth in *Martinez* for purposes of overcoming state procedural bars." *Id.* at *5. The court granted the *Rhines* stay, finding that the allegation of ineffective assistance of postconviction counsel constituted "good cause." *Id.* at *3.

Ellison's contention that the Arizona courts will reexamine their procedural rules in light of *Ramirez* is meritless. In *Ramirez*, the Supreme Court held that in adjudicating a *Martinez* claim, "a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state post-conviction counsel" unless the petitioner satisfies the stringent requirements of 28 U.S.C. § 2254(e)(2). 142 S. Ct. at 1734. Until *Ramirez*, in other words, petitioners like Ellison had the opportunity to present new evidence in federal court pursuant to *Martinez*. *Ramirez* had no effect on state post-conviction proceedings or preclusion rules, nor did it render any of Ellison's claims unexhausted rather than technically exhausted.

Ellison also asserts that Arizona trial courts have, in at least two historical instances, reviewed the merits of *Martinez*-like second or successive petitions. (Doc. 62 at 8-9, citing *State v. Carreon*, CR 2001-090195 (Maricopa Cnty. Super. Ct. Aug. 1, 2008), and *State v. Schurz*, CR 89-12547 (Maricopa Cnty. Super. Ct. July 26, 1995).) In addition to the

unpersuasive nature of these lower court rulings, the Court notes that, in *Carreon*, the order specifically found that Carreon was not filing a successive claim—rather, he was given leave to amend his original petition. Additionally, the court stated that Carreon had a constitutional right to the effective assistance of post-conviction counsel, which is inaccurate. *Ramirez*, 142 S. Ct. at 1737 ("[W]e have repeatedly reaffirmed that there is no constitutional right to counsel in state postconviction proceedings."). Ellison's lower court citations are also noteworthy for what they do not include—any post-*Martinez* decisions by an Arizona appellate court allowing a petitioner to excuse the preclusionary effect of Rule 32.2 and file a second PCR petition alleging trial counsel's ineffectiveness based on first PCR counsel's ineffectiveness.

IV.   **Appointment of Counsel**

Ellison asks the Court to authorize the Federal Public Defender's ("FPD") office to represent him in state court. (Doc. 60 at 15.) The Criminal Justice Act provides for appointed counsel to represent their client in "other appropriate motions and procedures." 18 U.S.C. § 3599(e). The Supreme Court interpreted § 3599 in *Harbison v. Bell*, 556 U.S. 180 (2009), holding that the statute "authorizes federally appointed counsel to represent their clients in state clemency proceedings and entitles them to compensation for that representation." *Id.* at 194. The Court explained that "subsection (a)(2) triggers the appointment of counsel for habeas petitioners, and subsection (e) governs the scope of appointed counsel's duties." *Id.* at 185. The Court noted, however, that appointed counsel is not expected to provide each of the services enumerated in section (e) for every client. Rather, "counsel's representation includes only those judicial proceedings transpiring 'subsequent' to her appointment." *Id.* at 188.

*Harbison* addressed the concern that federally appointed counsel would be required to represent their clients in state retrial or state habeas proceedings that occur after counsel's appointment because such proceedings are also "available post-conviction process." *Id.* The Court explained that § 3599(e) does not apply to those proceedings because they are not "properly understood as a 'subsequent stage' of judicial proceedings

but rather as the commencement of new judicial proceedings." *Id.* at 189. S*ee also Irick v. Bell*, 636 F.3d 289, 292 (6th Cir. 2011); *Lugo v. Sec'y, Fla. Dep't of Corr.*, 750 F.3d 1198, 1213 (11th Cir. 2014) (explaining "a state prisoner is not entitled, as a matter of statutory right, to have federally paid counsel assist him in the pursuit and exhaustion of his state postconviction remedies, including the filings of motions for state collateral relief. . . .") *cert. denied sub nom. Lugo v. Jones*, 574 U.S. 1125 (2015).

In *Harbison,* the Supreme Court also noted that "a district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation." 556 U.S. at 190 n.7. Here, the Court has determined that Ellison is not entitled to a *Rhines* stay. Based on that determination, together with *Harbison's* discussion of the parameters of § 3599(e), the Court concludes it is not necessary or appropriate to authorize the FPD to represent Ellison in state court.[7]

Accordingly,

**IT IS ORDERED** that Ellison's Motion for a Stay and Abeyance (Doc. 60) is **denied**.

**IT IS FURTHER ORDERED** that Ellison's request for federal habeas counsel to represent him in state court (Doc. 60) is **denied**.

**IT IS FURTHER ORDERED** that Claim 27 is **dismissed in part**.

Dated this 28th day of July, 2023.

Dominic W. Lanza
United States District Judge

---

[7] In support of his request for authorization, Ellison refers the Court to Ex. D, Judge Claire V. Eagan, Memorandum re Use of Defender Services Appropriated Funds by Federal Appointed Counsel for State Court Appearances in Capital Habeas Corpus Cases (Dec. 9, 2010)). This memorandum does not assist his position because Judge Eagan states that the memorandum is intended to address the issue of expending federal funds in state court once a determination has already been made that it is permissible for a claim to be remanded to state court for exhaustion. *Id.* at 2.