**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charles David Ellison, | No. CV-16-08303-PCT-DWL |
| Petitioner, | **ORDER** |
| v. | DEATH PENALTY CASE |
| Ryan Thornell, et al., | |
| Respondents. | |

On March 5, 2024, the Court issued an order concluding that the amended habeas petition of Charles David Ellison ("Ellison") should be denied. (Doc. 71.) Judgment was entered that same day. (Doc. 72.) Afterward, Ellison filed a timely Rule 59(e) motion to alter or amend the judgment. (Doc. 74.) The motion is now fully briefed. (Docs 75, 76.) The Court finds oral argument unnecessary and denies the motion for the reasons set forth below.

## DISCUSSION

### I.   Legal Standard

Rule 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Although the text of Rule 59(e) does not identify the standard for evaluating such a motion, "the view prevailing in the circuits is that motions to alter or amend the judgment are generally appropriate only in four situations: (1) to correct a manifest error of fact or law; (2) to incorporate newly discovered and previously unavailable evidence; (3) to prevent manifest injustice; and (4) to address

1    an intervening change in controlling law."  2 Steven S. Gensler & Lumen N. Mulligan,

2    Federal Rules of Civil Procedure, Rules and Commentary, Rule 59 (2023).  *See generally*

3    *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (agreeing that these are

4    the "four basic grounds upon which a Rule 59(e) motion may be granted").  The Ninth

5    Circuit has elaborated that "amending a judgment after its entry remains an extraordinary

6    remedy which should be used sparingly" and that it is an abuse of Rule 59(e) to "raise

7    arguments or present evidence for the first time when they could reasonably have been

8    raised earlier in the litigation."  634 F.3d at 1111-12 (cleaned up).

9    II.    *Leeds*

10          A.    **Relevant Background**

11          In Claim 45(C)(10) of his amended habeas petition, Ellison alleged that his trial

12   counsel performed ineffectively during the sentencing phase of trial by failing to inform

13   the jury that he would be ineligible for parole if sentenced to life.  (Doc. 21 at 273-75.)

14   Ellison did not raise this claim in state court but argued that its default was excused under

15   *Martinez v. Ryan*, 566 U.S. 1 (2012), due to the ineffectiveness of his post-conviction relief

16   ("PCR") counsel.  (*Id.* at 275.)

17          In the March 5, 2024 order, the Court disagreed, concluding that "*Martinez* does not

18   provide cause to excuse the procedural default because . . . the claim is plainly meritless."

19   (Doc. 71 at 185.)  More specifically, the Court concluded that trial counsel's failure to seek

20   a parole-ineligibility instruction under *Simmons v. South Carolina*, 512 U.S. 154 (2004),

21   did not qualify as deficient performance because although the "Arizona Supreme Court

22   had yet not considered *Simmons*'s applicability to Arizona's capital jury-sentencing

23   process in light of § 41-1604.09(I)" at the time of Ellison's sentencing in 2004, "in 2008,

24   the Arizona Supreme Court rejected an argument that *Simmons* required a trial court to

25   'presentence' a defendant by deciding before trial whether it would impose a parole-

26   eligible life sentence and instruct the jury accordingly."  (*Id.*, quoting *State v. Cruz*, 181

27   P.3d 196, 207 (Ariz. 2008)). The Court further noted that "[i]n later years, the Arizona

28   Supreme Court reaffirmed that *Simmons* did not apply in Arizona because a defendant

facing a death sentence was eligible to receive a life sentence with the possibility of parole under A.R.S. § 13-751(A)." (*Id.*, citing *State v. Lynch* ("*Lynch I*"), 357 P.3d 119, 138-39 (Ariz. 2015).)  The Court also noted that it was not until 2016 that the United States Supreme Court held that Arizona capital defendants are ineligible for parole for purposes of a *Simmons* instruction.  (*Id.* at 185-86, citing *Lynch v. Arizona* ("*Lynch II*"), 578 U.S. 613 (2016)).  "Given this backdrop," the Court concluded that "reasonable counsel could have concluded that Ellison was in fact parole eligible (and, therefore, there were no grounds for an objection).  Indeed, in a series of decisions issued between 2008 and 2015, the Arizona Supreme Court reached that very conclusion, which establishes that reasonable counsel in 2004 could have reached the same conclusion, too." (*Id.* at 186.)

### B.   **Analysis**

Ellison seeks reconsideration of the denial of Claim 45(C)(10), arguing that the Ninth Circuit's decision in *Leeds v. Russell*, 75 F.4th 1009 (9th Cir. 2023), qualifies as "an 'intervening change in controlling law' justifying Rule 59(e) relief."  (Doc. 74 at 3.)

This argument is unavailing.  As an initial matter, *Leeds* does not qualify as an *intervening* change in controlling law for purposes of Rule 59(e).  Although *Leeds* was decided in July 2023, after the briefing on Ellison's petition was complete, it predates by more than seven months the March 5, 2024 order denying the petition.  *Williams v. Sellers*, 2021 WL 6693937, *2 (S.D. Ga. 2021) ("Although Petitioner's petition was pending before this Court and the parties had submitted briefing on the merits when the Eleventh Circuit issued *Nance*, this Court had not yet issued an order on his petition for writ of habeas corpus.  Between the Eleventh Circuit's decision in December 2020 and this Court's order in August 2021, almost nine months passed.  In that time, Petitioner could have filed a notice of supplemental authority to argue that *Nance* altered the procedural landscape of the case but chose not to do so.  Thus, *Nance* cannot constitute an intervening change in controlling law."); *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 568 n.3 (5th Cir. 2003) ("*Nathenson* was decided on September 25, 2001, approximately five months before the district court granted the motions to dismiss, and thus cannot constitute an intervening

change in the law."); *Blakeney v. Ascension Servs., L.P.*, 2016 WL 6804603, *4 (N.D. Cal. 2016) (decisions "issued months before" were not "intervening" under Rule 59(e) because they "could have been raised to the Court prior to its order").

Timing aside, *Leeds* also does not represent a change, intervening or otherwise, in the *controlling* law.  The controlling law for purposes of evaluating a claim of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984).  *Leeds* did not change, overrule, limit, or "create[] a significant shift in a court's analysis" with respect to *Strickland*.  *Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 282 F.R.D. 216, 222 (D. Ariz. 2012) (cleaned up).  Instead, *Leeds* applied well-established principles governing ineffective assistance of counsel claims, as demonstrated by *Leeds*'s numerous citations to *Strickland*.  *Leeds*, 75 F.4th at 1017, 1018, 1022, 1023, 1024, 1025.  "[C]onfirmation or clarification of existing law is not tantamount to a change in controlling law."  *Teamsters Loc. 617*, 282 F.R.D. at 222.

At any rate, *Leeds* does not demonstrate that the denial of Claim 45(C)(10) was erroneous (let alone manifestly erroneous).  In *Leeds*, the Ninth Circuit concluded that trial counsel performed deficiently by failing to argue that, under Nevada law, the defendant could not be found guilty of burglarizing his own home.  75 F.4th at 1018-20.  The Ninth Circuit reached this conclusion even though the Nevada Supreme Court did not definitively rule on that issue until years after the defendant's trial.  *Id.* at 1018-19 (citing *State v. White*, 330 P.3d 482 (Nev. 2014)).  The Ninth Circuit quoted a subsequent Nevada Supreme Court decision that explained that *White* had "merely articulated the substantive law on burglary as it has always been in Nevada" and therefore "counsel could have challenged the burglary convictions and felony aggravating circumstance before *White* was decided."  *Id.* at 1019 (quoting *Weber v. State*, 2016 WL 3524627 (Nev. 2016)).  The Ninth Circuit also noted that prior Nevada cases, as well as decisions in states with similar burglary statutes, supported the argument that one could not burglarize one's own home.  *Id.* at 1019-20.  The Ninth Circuit thus concluded that Nevada precedent "could always have reasonably been interpreted to mean a person could not burglarize his own home," rendering counsel's

failure to make the argument deficient under *Strickland*. *Id.* at 1020.

Ellison's reliance on *Leeds* is misplaced for two reasons. The first concerns the legal backdrop that informs whether Ellison's trial counsel acted deficiently at the time of Ellison's sentencing (*i.e.,* January 2004) by failing to seek a parole-ineligibility instruction. As Respondents note, in 1999—that is, five years before Ellison's sentencing—the Arizona Supreme Court held that "Arizona's statute . . . states with clarity that the punishment for committing first degree murder is either death, natural life, *or life in prison with the possibility of parole*." *State v. Wagner*, 982 P.2d 270, 272 (Ariz. 1999) (emphasis added). Accordingly, this is not a situation where Ellison's trial counsel failed to make an argument that, although it had not been expressly adopted by the Arizona Supreme Court, was supported by existing Arizona cases and persuasive decisions from other jurisdictions. To the contrary, the argument at issue could have been reasonably viewed as foreclosed by existing Arizona case law. And as noted in the March 5, 2024 order, the Ninth Circuit and other courts have repeatedly concluded that an ineffective assistance claim will not lie under these circumstances. *See, e.g., Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) ("Lowry's lawyer cannot be required to anticipate our decision in this later case, because his conduct must be evaluated for purposes of the performance standard of *Strickland* as of the time of counsel's conduct") (citation omitted); *Gerard v. Gootkin*, 856 F. App'x 645, 646-47 (9th Cir. 2021) ("Lacey's counsel cannot be found ineffective for failing to argue a theory that had not been developed at the time of adjudication. Lawyers are not required to anticipate future changes in the law, but rather under *Strickland* are evaluated as of the time of their conduct. The failure to predict future changes in the law cannot be considered ineffective assistance.") (cleaned up); *May v. Ryan*, 807 F. App'x 632, 634-35 (9th Cir. 2020) ("Given the long-standing Arizona rule . . . which provided the background for the prevailing professional practice at the time of the trial, we cannot conclude that trial counsel's failure to object to the constitutionality of the statute[] . . . fell below an objective standard of reasonableness") (citations omitted); *Brown v. United States*, 311 F.3d 875, 878 (8th Cir. 2002) ("Brown . . . argues that his counsel's failure to have made an *Apprendi-*

type argument prior to the *Apprendi* decision constituted ineffective assistance of counsel. We reject Brown's argument.  Instead, we hold that his counsel's decision not to raise an issue unsupported by then-existing precedent did not constitute ineffective assistance.").

Notwithstanding this, Ellison argues that the unreasonableness of his trial counsel's failure to request a parole-ineligibility instruction is illustrated by "[a]ctual Arizona defense bar practices in the relevant period," which show that other Arizona defense attorneys sometimes "preserved challenges to false jury instructions about parole" even though such challenges were seemingly foreclosed by Arizona law.  (Doc. 74 at 6.)  The problem with this argument is that it overlooks the deferential nature of the inquiry under *Strickland*.  "In evaluating claims for ineffective assistance of counsel, we ask whether an attorney's representation amounted to *incompetence* under prevailing professional norms, not whether it deviated from best practices or most common custom.  Although it may be best practice to lodge objections to jury instructions even when they are consistent with prevailing law, an attorney's failure to do so does not amount to constitutionally deficient performance."  *United States v. Mazzeo*, 735 F. App'x 465, 466 (9th Cir. 2018) (cleaned up).

This principle dovetails with the second reason why Ellison's reliance on *Leeds* is misplaced.  To prevail on Claim 45(C)(10), Ellison not only needed to show that his trial counsel provided deficient performance by failing to request a parole-ineligibility instruction, but also that his PCR counsel provided deficient performance by failing to raise an ineffective-assistance claim premised on that failure.  *Martinez*, 566 U.S. at 17 ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial *if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective*.") (emphasis added).  Although the March 5, 2024 order focused on trial counsel's performance, the Rule 59(e) briefing persuades the Court that it is more analytically precise to also address the separate (if related) question of PCR counsel's performance, as

Respondents had previously requested.  (Doc. 30 at 189 ["*Martinez* does not provide cause to excuse the procedural default because the Arizona Supreme Court had repeatedly held at the time of Ellison's post-conviction proceeding that *Lynch*'s progenitor, *Simmons*, did not apply in Arizona.  Thus, there was no basis for post-conviction counsel to have raised an ineffective-assistance-of-counsel claim based on *Simmons* . . . ."].)

The relevant timeframe for assessing the performance of Ellison's PCR counsel is either July 2011, when counsel filed the PCR petition, or at the latest November 2015, when the PCR court issued its final order denying the PCR petition and Ellison's motion for reconsideration.  Those dates are significant because, by July 2011 and continuing through November 2015, the Arizona courts had spoken even more clearly on the *Simmons* issue and clarified that death-penalty defendants like Ellison were not entitled to a parole-ineligibility instruction under Arizona law.  For example, in September 2004, the Arizona Court of Appeals held that "the legislature intended to provide one sentencing option for persons convicted of first-degree murder other than death: a life term of imprisonment. The legislature gave trial judges the discretion to choose alternative conditions for that life term—natural life *or life with the possibility of parole* in twenty-five or thirty-five years . . . ."  *State v. Fell*, 97 P.3d 902, 912 (Ariz. Ct. App. 2004) (emphasis added).  Four years later, in April 2008, the Arizona Supreme Court went even further, holding that a death-penalty defendant was not entitled to "a pretrial ruling on whether, if the jury decided against the death penalty, the court would sentence him to life or natural life in prison" and that the defendant's reliance on *Simmons* was misplaced because his "case differs from *Simmons*.  No state law would have prohibited [his] release on parole after serving twenty-five years, had he been given a life sentence.  The jury was properly informed of the three possible sentences [he] faced if convicted: death, natural life, and life with the possibility of parole after twenty-five years."  *Cruz*, 181 P.3d at 207.  Finally, seven years after that, in September 2015, the Arizona Supreme Court expressly held that "refusing a *Simmons* instruction was not error" in a death-penalty case and that "[t]he trial judge . . . properly instructed the jury that she could impose a release-eligible sentence if the jury did not return

a death verdict." *Lynch I*, 357 P.3d at 138.

These circumstances are much different than *Leeds*, where the defendant's post-conviction relief counsel "could have made the [ineffective assistance of trial counsel] argument in 2013 by relying on a common understanding of the definition of 'burglary,' basic statutory interpretation principles, and the law of other states with similar criminal statutes," all of which showed that the argument was "sufficiently foreshadowed in existing case law." *Leeds*, 75 F.3d at 1022 (cleaned up). Here, in contrast, any ineffective-assistance claim premised on trial counsel's failure to request a parole-ineligibility instruction would have been directly foreclosed by then-binding Arizona case law. Of course, we now know that the United States Supreme Court subsequently held that the Arizona courts' understanding of this issue was incorrect, but *Leeds* does not hold that *Strickland* requires trial counsel and PCR counsel to raise arguments that are futile under then-existing state law in the hope the United States Supreme Court will grant *certiorari* and then disagree. *Cf. Lewis v. Thornell*, 2024 WL 909810, *1 (9th Cir. 2024) ("At the time the state post-conviction petition was filed, there was widespread confusion about the availability of parole for first degree murder in Arizona, and an Arizona Supreme Court case, later disapproved, stated that parole for first degree murder was available. The practice of lawyers and judges often assumed the availability of parole, and many defendants had been given sentences that included the possibility of parole despite the statute abolishing parole. . . . Given those circumstances, it was reasonable for Lewis's post-conviction counsel not to raise a claim of ineffective assistance of counsel related to Lewis's illegally lenient sentence."); *Schultz v. United States*, 2005 WL 1529698, *1 (S.D.N.Y. 2005) ("At the time of sentence, . . . the precise argument that Schultz now claims that his trial counsel should have raised had been explicitly rejected by the Second Circuit . . . . A Nostradamus might have been able to predict that the Supreme Court would reach a contrary conclusion some four years later; but for the rest of us mere mortals, there would be no way to infer a reasonable probability that a higher court would rule in the defendant's favor.") (cleaned up). *See generally Sophanthavong v. Palmateer*, 378 F.3d

859, 870 (9th Cir. 2004) ("*Strickland* does not mandate prescience, only objectively reasonable advice under prevailing professional norms.").[1]

III.   <u>Purported Inconsistency With Claim 27</u>

   A.   **Relevant Background**

In Claim 27, Ellison alleged that his rights were violated when the trial court erroneously instructed the jury that life imprisonment included the "possibility of release from confinement on parole or otherwise after the completion of at least 25 calendar years of confinement." (Doc. 21 at 154-63.) Ellison conceded that he did not raise this claim in state court. (*Id.* at 154.) Ellison subsequently moved for a stay of his habeas proceedings under *Rhines v. Weber*, 544 U.S. 269 (2005), so he could exhaust a due-process based *Simmons* claim. (Doc. 60.)

In a July 28, 2023 order, the Court denied Ellison's stay request. (Doc. 68.) Although Respondents conceded that Ellison satisfied *Rhines*'s good-cause and lack-of-intentional-dilatoriness prongs, the Court denied a stay on the ground that Claim 27 was "plainly meritless." (*Id.* at 9-11.) The Court explained that because "Ellison has failed to allege the necessary predicates of a colorable *Simmons* claim—he did not request that the jury be informed of his parole ineligibility," "it would be an empty gesture to allow Ellison to return to state court to litigate his *Simmons* claim." (*Id.* at 10, 11.) Alternatively, because the United States Supreme Court's recent decision in *Cruz v. Arizona*, 143 S. Ct. 650 (2023), which held that *Lynch II* represented a "significant change in the law" under Arizona's Rules of Criminal Procedure, "arguably render[ed] Ellison's due process-based *Simmons* claim unexhausted and his petition therefore mixed," the Court "also den[ied] the due-process based *Simmons* claim on the merits." (*Id.* at 11.)

…

…

---

[1]   In the March 5, 2024 order, the Court also concluded that Claim 45(C)(10) failed under *Strickland*'s prejudice prong. (Doc. 71 at 187.) Ellison challenges that analysis in his Rule 59(e) motion. (Doc. 74 at 8-9.) Although, on reflection, the prejudice inquiry presents a closer issue, it is unnecessary to reexamine that issue here in light of the determination that trial and PCR counsel did not perform deficiently.

1

B.    **Analysis**

2        Ellison argues that the Court's "adjudication of Claim 45(C)(10) is inconsistent with

3    its adjudication of Claim 27" and that "[h]aving denied relief on Claim 27, the Court must

4    reverse its ruling on Claim 45(C)(10) to prevent a manifest injustice."  (Doc. 74 at 9, 11.)

5    According to Ellison, this is because the finding in the July 28, 2023 order that he satisfied

6    *Rhines*'s good-cause prong in relation to Claim 27 amounted to an implicit determination

7    that Claim 27 was a "plausible cognizable claim."  (Doc. 74 at 9.)  Ellison further contends

8    that the good-cause finding amounted to an implicit determination that his counsel

9    provided deficient performance under *Strickland* by failing to raise the claim.  (Doc. 76 at

10    7 n.8 ["Ellison does not presently seek reconsideration of the Court's denial of a *Rhines*

11    stay for Claim 27, but instead argues that the Court's bases for denying him the stay

12    establish deficient performance and prejudice under *Strickland*."].)  Ellison concludes that

13    "[t]he Court's rulings, taken together, are Kafkaesque . . . ."  (Doc. 74 at 11.)

14        These arguments are unavailing.  The Court does not agree that a good-cause finding

15    for *Rhines* purposes is an implicit finding that the unraised claim is potentially meritorious

16    and that counsel necessarily engaged in deficient performance under *Strickland* by failing

17    to raise it.  That cannot be the case, or the potentially-meritorious prong under *Rhines*

18    would be superfluous.  The Court denied a stay because Ellison failed to satisfy *Rhines*'s

19    potentially-meritorious prong and because Claim 27 was in fact plainly meritless.  (Doc.

20    68 at 9-11.)  The Court repeated this conclusion in the March 5, 2024 order denying

21    Ellison's amended habeas petition.  (Doc. 71 at 123 ["The Court has already dismissed

22    Claim 27 as meritless."].)  There is no inconsistency in the rulings on Claim 27.

23        Ellison also contends the Court "overlooked" two additional arguments he made in

24    Claim 27.  (Doc. 74 at 13.)  Ellison's additional arguments are (1) a "broader due process

25    challenge [that] is similar to but distinct from the one arising from *Simmons*"; and (2) an

26    Eighth Amendment challenge.  (*Id.* at 13, 14.)   Respondents contend that Ellison did not

27    put the Court on notice that he was raising these claims.  (Doc. 75 at 7-8.)

28        The Court will begin by addressing Ellison's contention that Claim 27 included a

due process claim that is broader than *Simmons*.  The arguments in Claim 27 focused on *Simmons* and its progeny, including *Shafer v. South Carolina*, 532 U.S. 36 (2001), *Kelly v. South Carolina*, 534 U.S. 246 (2002), and *Lynch II*.  (Doc. 21 at 154-60.)  Ellison also cited a series of state-court cases involving "*Simmons* error."  (*Id.* at 162-63.)  As a result, in the order denying Ellison's request for a *Rhines* stay, the Court construed Ellison's due process claim in Claim 27 as being wholly based on *Simmons*.  (Doc. 68 at 5 n.2 ["In Claim 27, Ellison asserts that the incorrect jury instruction at issue violated both his due process and Eighth Amendment rights.  Because Ellison seeks to stay his petition and return to state court to exhaust only his due process claim under *Simmons*, this is the only portion of the claim the Court considers here."]; *id.* at 9 ["Having carefully considered the parties' arguments and the cases set forth in the original and supplemental briefing, the Court concludes that Ellison is not entitled to a *Rhines* stay as to his *Simmons*-based due process claim in Claim 27."])

Although Ellison never sought clarification as to that ruling, he now contends that a fleeting citation to *Hicks v. Oklahoma*, 447 U.S. 343 (1980), that was tucked into the middle of Claim 27 of his amended habeas petition (*see* Doc. 21 at 155-56) sufficed to put the Court on notice that Claim 27 was also raising a due process claim "grounded outside *Simmons*'s so-called 'right of rebuttal.'"  (Doc. 76 at 8.)  The Court disagrees.  That citation, unsupported by any additional argument, was inadequate to alert the Court that Ellison was making a due process claim analytically distinct from his claim of *Simmons* error.  *See, e.g., Corridore v. Smith v Sec'y, Dept. of Corrections*, 572 F.3d 1327, 1352 (11th Cir. 2009) (argument not fairly presented when it was only found in one sentence of a 116-page habeas petition and no supporting authority was given); *Corridore v. Washington*, 71 F.4th 491, 500 (6th Cir. 2023) ("Corridore, who was represented by counsel below, argues that the single line in his petition referencing the 'twin burdens' of LEM and SORA preserved his SORA arguments on appeal.  But a one sentence argument is insufficient to preserve an argument on appeal.") (cleaned up).  Indeed, in his amended habeas petition, Ellison focused for several pages on *Simmons*, then vaguely alluded (if at

all) to a broad due process claim, and then returned to his *Simmons* arguments.  *United States v. Mullet*, 822 F.3d 842, 849 (6th Cir. 2016) ("To preserve an argument, it does not suffice to mention a point obliquely, then focus the rest of the brief on other arguments.").

In any event, *Hicks* does not support a finding that Ellison's due process rights were violated.  In *Hicks*, an Oklahoma jury sentenced the defendant to a mandatory-minimum sentence under the state's habitual offender law.  447 U.S. at 345-46.  The state appellate court affirmed the sentence even though the law had been found unconstitutional, reasoning that the sentence was within the range the jury could have imposed.  *Id.* at 345.  The United States Supreme Court reversed, holding that the state appellate court violated the defendant's state-created liberty interest in being sentenced by a jury and thereby violated his federal due process rights.  *Id.  Hicks* thus "recognized that state laws which guarantee a criminal defendant procedural rights at sentencing, even if not themselves constitutionally required, may give rise to liberty interests protected against arbitrary deprivation by the Fourteenth Amendment's Due Process Clause."  *Campbell v. Blodgett*, 997 F.2d 512, 522 (9th Cir. 1992).  But Ellison identifies no authority, and the Court has found none, holding that a state-created liberty interest is violated when a court fails to provide a *sua sponte* parole-ineligibility instruction.  *Simmons* remains the correct analytical framework for the alleged due process violation.  The remainder of Ellison's arguments simply ask the Court to rethink what it has already thought through.

The Court now turns to Ellison's argument that Claim 27 also raised an Eighth Amendment claim.  The only references to the Eighth Amendment within Claim 27 were in the heading and in a later citation to *Boyde v. California*, 494 U.S. 370 (1990).  (Doc. 21 at 154, 162.)  Even assuming this was sufficient to preserve an Eighth Amendment claim, the Court now clarifies that any Eighth Amendment claim fails on the merits.

In *Boyde*, the Supreme Court rejected an Eighth Amendment challenge to California's "catchall" mitigating instruction.  494 U.S. at 380-83.  Ellison does not cite authority for the proposition that the Eighth Amendment is violated when a parole-ineligibility instruction is not provided, and in *Simmons* the Court went out of its way to

"express no opinion on the question whether the result we reach today is also compelled by the Eighth Amendment."  512 U.S. at 162 n.4.  *See generally United States v. Stitt*, 250 F.3d 878, 889 (4th Cir. 2001) ("Neither the Supreme Court nor this Circuit . . . has held that the Eighth Amendment is applicable where the Government alleges future dangerousness but it is unlikely that the defendant will ever be released on parole, and we decline to do so in this case."); *Warner v. Workman*, 814 F. Supp. 2d 1188, 1207 (W.D. Okla. 2011), *aff'd sub nom. Warner v. Trammell*, 520 F. App'x 675 (10th Cir. 2013) ("Petitioner fails to cite clearly established federal law that supports an Eighth Amendment violation for a failure to instruct a jury on the meaning of life without parole.").

Accordingly,

**IT IS ORDERED** that Ellison's Rule 59(e) motion (Doc. 74) is **denied**.

Dated this 7th day of May, 2024.

_____
Dominic W. Lanza
United States District Judge